FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ROSA LOZANO, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:21-CV-1365-P |
| § | |
| COMMISSIONER, SOCIAL SECURITY § | |
| ADMINISTRATION. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE AND NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

**I.      STATEMENT OF THE CASE**

Plaintiff Rosa Lozano ("Lozano") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). Lozano protectively filed her applications in September 2019, alleging that her disability began on April 20, 2019. (Transcript ("Tr.") at 16; see Tr. 216-225. After her applications were denied initially and on reconsideration, Lozano requested a hearing before an administrative law judge ("ALJ"). (Tr. 141-2.) The ALJ held a hearing on March 11, 2021, and issued a decision on April 6, 2021, denying Lozano's applications for benefits. (Tr. 37-80, 16-21.) On November 22, 2021, the Appeals Council denied Lozano's request for review, leaving the ALJ's April 6, 2021, decision as the final decision of the Commissioner in Lozano's case. (Tr. 1-6.) Lozano subsequently filed this civil action seeking review of the ALJ's decision.

1

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i). "Substantial gainful activity" is defined as work activity involving the use of significant and productive physical or mental abilities for pay or profit. *See id.* §§ 404.1510, 416.910. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).[1] Fourth, if disability cannot be found

---

[1] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity to determine the most the claimant is able to do notwithstanding her physical and mental limitations. 20 C.F.R. §§ 404.1520(a)(4), (e), 416.920(a)(4), (e). The claimant's RFC is used at both the fourth and

2

based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f), 416.920(a)(4)(iv), (f). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experiences. *Id.* §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to then show that he cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollis v. Astrue*,

---

fifth steps of the five-step analysis. *Id.* §§ 404.1520(a)(4), 416.920(a)(4). At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

3

No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

In her brief, Lozano presents the following issues:

A. Whether the ALJ failed to fully develop the record,[2] and

B. Whether the ALJ applied the correct legal standards at Step Three of the sequential evaluation.

(Pl.'s Br. at 5.)

### IV. ALJ DECISION

In his April 6, 2021, decision, the ALJ found at Step One that Lozano had not engaged in substantial gainful activity since April 20, 2018, the alleged onset date of disability, and that Lozano continued to meet the insured status requirements of the SSA through June 30, 2023. (Tr. 18.) At Step Two, the ALJ concluded that Lozano had the following severe impairments: "insulin dependent diabetes mellitus (type II) with upper extremity neuropathy and/or post-herpetic neuralgia, migraines, obesity, and asthma." (Tr. 19.) At Step Three, the ALJ found that Lozano did not suffer from an impairment or combination of impairments that met or equaled the severity of any impairment in the Listing. (Tr. 21.)

At Step Four, as to Lozano's RFC, the ALJ stated:

> [C]laimant has the residual functional capacity to lift, carry, push and pull up to 20 pounds occasionally and 10 pounds frequently in light work as defined by the regulations. She can stand and or walk 6 hours in an 8-hour day. She can sit 6 hours in an 8-hour day. She requires a sit/stand option at 60-minute intervals, for

---

[2] While Lozano states that the ALJ failed to fully and fairly develop the record, the issue raised by Lozano actually appears to be that the ALJ erred by improperly substituting his own opinion for that of the medical opinion evidence of record in determining Lozano's RFC. (Plaintiff's Brief ("Pl.'s Br.") at 11 (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)).)

4

3 to 5 minutes at a time, during which periods she may remain on task. She may occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. She may never climb ladders, ropes, and scaffolds. With the upper extremities, she may frequently handle, finger, and feel. With the lower extremities, she may occasionally push, pull, and engage in foot pedal operations. She must avoid more than occasional exposure to extreme heat, cold, vibration, extremely bright lighting, loud noise, and concentrated pulmonary irritants such as fumes, odors, dust, gases, chemicals, and poorly ventilated spaces. She should avoid all exposure to hazards such as dangerous moving machinery and unsecured heights. She can attend, concentrate, and maintain pace for two hours at a time with normal breaks.

(Tr. 21.) Based upon this RFC assessment and the testimony of a vocational expert ("VE"), the ALJ concluded that Lozano is capable of performing past relevant work as a loan officer and that there were jobs that exist in significant numbers in the national economy that Lozano can perform.[3] (Tr. 25.) Consequently, the ALJ found that Lozano was not disabled. (Tr. 27.)

## V.   DISCUSSION

### A. RFC Determination

As stated above, Lozano argues that the ALJ failed to fully and fairly develop the record when he did not obtain a medical source statement when assessing Lozano's RFC. (Pl.'s Br. at 6.) However, it appears Lozano is actually arguing that the ALJ erred by improperly relying on his own lay interpretation of the medical evidence to deny Plaintiff's disability claim. (Pl.'s Br. at 13 (citing *Ripley*, 67 F.3d at 557).) Specifically, Lozano claims:

> [T]he state agency medical examiner, Dr. Amita Hedge, M.D., found the Plaintiff had the single severe impairment of diabetes mellitus and evaluated the impairment under Listing 6.06 . . . Dr. Hedge opined the claimant retained the RFC to lift and carry 50 pounds occasionally and 25 pounds frequently and she could sit, stand and walk for 6 hours in an 8-hour workday. Dr. Hedge found the Plaintiff had no postural, environmental or manipulative limitations. At the reconsideration stage of the appeals process, Dr. Kim Rowlands, M.D., the state agency medical examiner, made the same findings of fact [as Dr. Hedge] . . . . [T]he ALJ found the Plaintiff had the severe impairment of insulin dependent diabetes mellitus as well as the severe impairments of upper extremity neuropathy, postherpetic neuralgia,

---

[3] The VE testified and the ALJ found that Lozano would be able to perform the following jobs: (1) Marketing Clerk (Dictionary of Occupational Titles ("DOT") No. 209.587-034); (2) Furniture Rental Consultant (DOT 295.357-018); Routing Clerk (DOT 222.687.-022); Document Preparer (DOT 249.587-018); Election Clerk (DOT 205.367-030); and Taper, Printed Circuit Layout (DOT 017.684-010).

5

migraines, obesity and asthma . . . . Thus, the ALJ made the determinations that the Plaintiff's upper extremity neuropathy, post-herpetic neuralgia, migraines obesity and asthma were medical abnormalities causing more than a minimal affect on her ability to perform work related functions.

(Pl.'s Br. at 10-11 (internal citations omitted).) Lozano further states:

> In support of the found functional limitations, the ALJ rejected Dr. Hedge's and Dr. Rowlands' medical opinions . . . [with] no medical basis for the ALJ's found RFC. Instead[,] the ALJ based the RFC on the Plaintiff's "medical evidence," and "hearing testimony."
>
> . . . .
>
> The ALJ never cited to anything specific as to why [Lozano's] reported functional limitations "cannot reasonably be accepted as consistent with the medical and other evidence. Therefore, the ALJ's rationale for finding that [Lozano] was limited to standing for 15 minutes at a time and one hour total in an 8-hour workday, could not lift and carry more than a gallon of milk and had difficulty holding onto items was nothing more than an erroneous attempt at playing doctor when he determined [Lozano's] functional limitations.

(Pl.'s Br. 11, 12 (internal citations omitted).)

In response, the Commissioner argues:

> [The ALJ] heard testimony at the administrative hearing regarding the materials in the case, including Plaintiff's account of her medical, educational, social, and employment history. Additionally, the ALJ obtained and reviewed the pertinent medical records.
>
> . . . .
>
> When the ALJ weighs the medical evidence, he is fulfilling his statutory responsibility, not "playing doctor." What Plaintiff characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine Plaintiff's capacity to work.

(Def.'s Resp. at 10, 11 (internal citations omitted).)

RFC is what an individual can still do despite his limitations.[4] SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do

---

[4] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[5] factors to be considered, and it is based upon all of the relevant evidence in the case record. *Id.* at 3-6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 404.1529; SSR 16-3P, 2017 WL 5180304, at *1 (S.S.A. Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

---

[5] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704.

As to Lozano's physical RFC determination, the ALJ, as set forth above, found that Lozano had the RFC to perform "less than light work":

> [Lozano may] lift, carry, push and pull up to 20 pounds occasionally and 10 pounds frequently in light work as defined by the regulations. She can stand and or walk 6 hours in an 8-hour day. She can sit 6 hours in an 8-hour day. She requires a sit/stand option at 60-minute intervals, for 3 to 5 minutes at a time, during which periods she may remain on task. She may occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. She may never climb ladders, ropes, and scaffolds. With the upper extremities, she may frequently handle, finger, and feel. With the lower extremities, she may occasionally push, pull, and engage in foot pedal operations. She must avoid more than occasional exposure to extreme heat, cold, vibration, extremely bright lighting, loud noise, and concentrated pulmonary irritants such as fumes, odors, dust, gases, chemicals, and poorly ventilated spaces. She should avoid all exposure to hazards such as dangerous moving machinery and unsecured heights. She can attend, concentrate, and maintain pace for two hours at a time with normal breaks.

(Tr. 24, 21.) In making Lozano's RFC determination, the ALJ opined:

> In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . I also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements.
>
> . . . .
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.

8

(Tr. 22.) Regarding the persuasiveness of the state agency medical consultants' ("SAMCs") opinions, the ALJ stated:

> [The SAMCs] did not review all of the medical evidence and did not have the benefit of considering the claimant's hearing testimony. They never had the opportunity to examine, or even meet with and question, the claimant. The assessment of medium exertion is insufficiently restrictive in light of the claimant's persistent symptoms of diabetic neuropathy and migraines . . . Therefore, given the combined symptoms of the claimant's diabetic neuropathy, migraine headaches, and obesity, I find these opinions unpersuasive and limit the claimant to less than light work.

(Tr. 24.)

Lozano, in citing to *Ripley, supra*, argues that, in essence, the ALJ erroneously rejected SAMCs Hedge and Rowlands' medical opinions and set forth an RFC determination that was not based on any medical evidence in the record. (Pl.'s Br. at 11-15.) Lozano claims that the ALJ erred because the ALJ, in essence, did not have any medical or other evidence as the basis for adding such limitations into the physical RFC determination. (Tr. 12.)

In *Ripley*, the ALJ found that the claimant could perform sedentary work even though there was no medical evidence or testimony to support that conclusion. 67 F.3d at 557. The Fifth Circuit Court of Appeals, noting that the record contained a vast amount of evidence establishing that the claimant had a back problem[6] but not clearly establishing the effect that condition had on his ability to work, remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work.[7] *Id.* at 557–58. The Fifth Circuit rejected the injuries substantially supported the ALJ's conclusion because

---

[6] "The evidence that was available for review by the ALJ shows a four[-]year history of surgery, medical examinations, and complaints of pain" as well as the claimant's testimony. *Id.*

[7] "While *Ripley* itself remains precedent, its emphasis on treating physicians' opinions no longer holds sway." *Vasquez v. Comm'r of Soc. Sec.*, No. 7:21-cv-00028-BP, 2022 WL 2975471, at *4 (June 30, 2022) (citing *Webster v. Kijakazi*, 19 F.4th 715, 718-19 (5th Cir. 2021) (discussing 20 C.F.R. §404.1520c)).

9

the Court was unable to determine the effects of the claimant's condition, "no matter how 'small,'" on his ability to work, absent a report from a qualified medical expert. *Id.* at 557 n.27.

As noted above, the ALJ is responsible for assessing a claimant's RFC based on all the relevant evidence in the record. 20 C.F.R. § 404.1546(c). If substantial evidence in the record supports an ALJ's determination of a claimant's RFC, there is no reversible error. *See Gutierrez v. Barnhart,* 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005). In this case, differing from the facts in *Ripley*, in which the "only evidence regarding Ripley's ability to work came from Ripley's own testimony," the RFC opinions from the SAMCs clearly assess at least some of the effects of Lozano's functional physical limitations on her ability to perform work. *Ripley*, 67 F.3d at 557. However, the ALJ "considered" the SAMCs opinions but rejected them as "insufficiently restrictive" and "unpersuasive." (Tr. 24.) Ultimately, the ALJ's determination of Lozano's RFC to encompass "less than light work" is more stringent than the limitations found by the SAMCs, who recommended "medium exertion." (Tr. 24.) The problem with including new, more restrictive limitations (when the SAMCs found medium exertion limitations) is that there is no medical opinion supporting which work tasks Lozano could perform despite her diabetic symptoms, neuropathy, migraine headaches, and obesity. *See Silves H. v. Kijakazi*, No. 3:22-cv-286-K-BN, 2022 WL 17345924, at *4 (N.D. Tex. Nov. 14, 2022) ("Since the ALJ implicitly rejected the SAMCs' opinions [that found no limitations on handling, fingering, or feeling] by finding that Plaintiff had manipulative limitations, there are no medical opinions concerning Plaintiff's ability to handle and finger during an eight-hour workday[] [a]nd the undersigned cannot determine whether the ALJ's RFC finding concerning Plaintiff's handling and fingering limitations is otherwise supported by substantial evidence in the record because the ALJ does not identify medical or other evidence as the basis for her finding.") As a result, the ALJ appears to

have been playing the role of doctor "for which [he is] generally ill-equipped." *Bowles v. Comm'r of Soc. Sec.*, No. 7:20-cv-00112-O-BP, 2021 WL 7451148, at *2-5 (N.D. Tex. Oct. 19, 2021).

Consequently, the Court concludes that the Commissioner's final decision is not supported by substantial evidence because the ALJ made the physical RFC assessment regarding Lozano's limitations without a medical opinion addressing the effects of her diabetic symptoms, neuropathy, migraine headaches, and obesity. *McNett v. Comm'r Social Security Administration*, No. 4:20-CV-01200-P, 2021 WL 4848932, at *2 (N.D. Tex. Sept. 27, 2021), *rec. adopted*, 2021 WL 4845776 (N.D. Tex. Oct. 18, 2021, 2021 WL 4848932). Specifically, the ALJ erred in performing his duty to develop the facts fully and fairly and obtain a report form a qualified medical expert explaining how Lozano's medical conditions affect her ability to work and result in light work limitations. *See, e.g., Bratu v. Comm'r of Soc. Sec.*, No. 22-cv-0079-O-BP, 2022 WL 5264512, at *4-7 (N.D. Tex. Set. 19, 2022); *Bowles v. Comm'r of Soc. Sec.*, No. 7:20-cv-00112-O-BP, 2021 WL 7451148, at *2-5 (N.D. Tex. Oct. 19, 2021).

However, the existence of this error does not automatically result in reversal of the Commissioner's decision. *See Bratu*, 2022 WL 5264512, at *6. "Procedural perfection in administrative proceedings is not required," and a court "will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam). "The touchstone for assessing prejudice is whether errors 'cast into doubt the existence of substantial evidence to support the ALJ's decision.'" *Bratu*, 2022 WL 5264512, at *6 (quoting *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)). In this case, the absence of a medical opinion addressing Lozano's limitations casts doubt on the ALJ's decision; consequently, remand is required. *See Bratu*, 2022 WL 5264512, at *6; *McNett*, 2021 WL 4848932, at *6.

## RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that the ALJ's decision be **VACATED** and that the case be **REMANDED** to the agency for further proceedings.[8]

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

---

[8] As the Court is recommending remand, it will not address Lozano's remaining issue. If the District Judge does not agree and accept the recommendation of remand, the undersigned will address the remaining issue.

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **March 16, 2023,** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED March 2, 2023.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE